1
2
3
4
5
6
7
8
9
10

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

11  ALBERT SANCHEZ, SR.,                        CASE NO. 10-CV-1628 JLS (RBB)

12                              Plaintiff,      **ORDER: DENYING PLAINTIFF'S
                                                EX PARTE APPLICATION FOR A**
13        vs.                                   **TEMPORARY RESTRAINING
                                                ORDER AND/OR AN ORDER TO**
14                                              **SHOW CAUSE WHY A
                                                PRELIMINARY INJUNCTION**
15  ALBERT SANCHEZ, JR.; GARNETT               **SHOULD NOT BE ENTERED**
    MCKEEN LABORATORY, INC.; EL-GEN
16  LLC; AMARC ENTERPRISES, INC.; ALO          (Doc. No. 6)
    INVESTMENTS, LLC.; et al.,
17                              Defendants.

18

19        Presently before the Court is Plaintiff's ex parte application for a temporary restraining order

20  (TRO) and order to show cause why a preliminary injunction should not be entered.  (Doc. No. 6

21  (Appl.).)  Also before the Court is Defendant's opposition.  (Doc. No. 7 (Opp'n).)  Having fully

22  considered the parties' arguments and the law, the Court **DENIES** Plaintiff's application.

23                              **FACTUAL BACKGROUND**

24        The parties dispute virtually all of the relevant facts.  Accordingly, the following factual

25  background outlines the undisputed facts.  Where a dispute of fact exists, the Court so indicates.

26        In 1995, Defendant Garnett McKeen Laboratory, Inc. (GML) introduced Plaintiff to a then-

27

28

new dietary supplement product, which came to be known as POLY-MVA.[1]  (Doc. No. 6-2 (Albert Sanchez, Sr. Decl.) ¶ 3.)  POLY-MVA consists of "[a] proprietary blend of palladium, alpha lipoic acid, vitamins B1, B2 and B12, and specific trace minerals and amino acids . . . ."  (Doc. No. 8-1 (Albert Lee Sanchez Decl.) Ex. C.)  "[POLY-MVA] is marketed as a dietary supplement that has the ability to restore the nutrients lost and heal the damage that is common during treatments, diets[,] and therapies."  (*Id.*)

After GML introduced Plaintiff to POLY-MVA, Plaintiff agreed to "assume the Sole Worldwide Distribution rights" for the product (Albert Sanchez, Sr. Decl. ¶ 4 & Ex. 1) and immediately began to market and sell it under the POLY-MVA mark (*id.* ¶ 6).[2]  Plaintiff claims to have marketed POLY-MVA through Advanced Medicine and Research Center (AMARC), a sole proprietorship (*id.* ¶ 14); according to Defendants, Plaintiff marketed POLY-MVA through Defendant AMARC Enterprises, Inc., a corporation formed with Plaintiff's consent in 2002, and Advanced Medicine Information Center (AMIC), the successor to the sole proprietorship AMARC (Albert Lee Sanchez Decl. ¶¶ 12–17, 19 & Ex. C; Doc. No. 8-2 (McKeen Decl.) ¶ 3).  Regardless of which entity held the distribution rights, the parties agree that in 2008, Defendant El-Gen LLC, GML's manufacturing subsidiary (Albert Sanchez, Sr. Decl. ¶ 9), terminated the distribution agreement (*id.* ¶ 10; McKeen Decl. ¶ 9 & Ex. D).  In 2009, El-Gen and GML entered into a new distribution agreement regarding POLY-MVA with AMARC Enterprises.  (McKeen Decl. ¶ 12; Albert Lee Sanchez Decl. ¶ 22 & Ex. E; Albert Sanchez, Sr. Decl. ¶ 10.)

According to Plaintiff, Defendant Albert Lee Sanchez secretly formed AMARC Enterprises and ALO Investments, LLC in 2002.  (Albert Sanchez, Sr. Decl. ¶¶ 14, 20.)  Through ALO, Albert Lee Sanchez allegedly fraudulently obtained trademark protection for the POLY-MVA mark.  (*Id.*

---

[1]  The parties' memoranda and declarations in support of and in opposition to the application variously refer to the product as "POLY-MVA," "Poly-MVA," and "POLYMVA."  (*Compare* Doc. No. 6-1 (Mem. ISO Appl.), at 1–12 (POLY-MVA), *and* Albert Sanchez, Sr. Decl. *passim* (same), *with* Opp'n 3–7 (Poly-MVA and POLYMVA), *and* Albert Lee Sanchez Decl. *passim* (POLYMVA).)  The operative complaint refers to the product as "POLY-MVA" (*see* Doc. No. 5 (FAC) *passim*), and the Court adopts that usage unless directly quoting another source.

[2]  According to Defendants, sometime thereafter, the Food and Drug Administration began investigating certain statements Plaintiff made regarding POLY-MVA.  (Albert Lee Sanchez Decl. ¶¶ 8, 20.)

¶¶ 21, 23–24.) The United States Patent and Trademark Office subsequently canceled the registration for the POLY-MVA mark. (*Id.* ¶¶ 24–27.) On April 27, 2010, ALO—again allegedly fraudulently—began anew the registration process for the POLY-MVA mark. (*Id.* ¶¶ 28–29, 31.) According to Plaintiff, Albert Lee Sanchez has used ALO's status as registrant of the POLY-MVA mark to force Plaintiff to purchase POLY-MVA only from Albert Lee Sanchez's company, presumably AMARC Enterprises. (*See id.* ¶ 35.) Plaintiff claims that Albert Lee Sanchez and ALO never owned and were never entitled to register the POLY-MVA mark. (*Id.*)

Defendants vigorously dispute Plaintiff's allegations. Defendants contend that AMARC Enterprises and ALO were formed with Plaintiff's knowledge and consent[3] for the purpose of insulating the POLY-MVA business from Plaintiff's creditors. (Albert Lee Sanchez Decl. ¶¶ 9–12.) "As part of this asset protection plan, the decision was made with the participation of Plaintiff and his family that ALO Investments . . . would hold the trademark for the 'POLYMVA' name." (*Id.* ¶ 23.) According to Defendants, AMARC Enterprises employed Plaintiff[4] as a consultant between 2002 and 2008, during which time Plaintiff sold POLY-MVA that he purchased from AMARC Enterprises. (*Id.* ¶ 17.) However, when El-Gen and GML expressed their desire to enter into a new distribution agreement precluding Plaintiff from making certain claims regarding POLY-MVA, Plaintiff "walked away from the offer" and, apparently, AMARC Enterprises. (*Id.* ¶¶ 20–21.)

## PROCEDURAL BACKGROUND

On August 4, 2010, Plaintiff filed his original complaint (Doc. No. 1), and on August 12, 2010, the case was reassigned to this Court (Doc. No. 4).[5] On August 14, 2010, Plaintiff filed his first amended complaint, the operative complaint in this action. (Doc. No. 5.) On August 30, 2010, Plaintiff filed the instant application.

On September 1, 2010, the Court denied Plaintiff's application without prejudice because

---

[3] The contention that Plaintiff knew of and participated in the formation of AMARC Enterprises is supported by a report Plaintiff authored in which he described himself as the "founder of AMARC Enterprises." (Albert Lee Sanchez Decl. Ex. A.)

[4] Defendants allegedly employed Plaintiff through AMIC, which succeeded to the sole proprietorship AMARC. (*See* Albert Lee Sanchez Decl. ¶¶ 15, 17, 19.)

[5] This case was originally assigned to the Honorable Thomas J. Whelan. (*See* Doc. No. 4.)

Plaintiff had served neither the complaint nor the application on Defendants, and the application did not meet the requirements for the issuance of a TRO without notice. (Doc. No. 7.)  The Court directed Plaintiff to serve Defendants by September 7, 2010 and set a hearing on Plaintiff's application for September 16, 2010.  (Doc. No. 7.)  On September 13, 2010, Defendants filed their opposition to Plaintiff's application. (Doc. No. 8.)  On September 15, 2010, the parties jointly moved for a thirty-day continuance of the hearing on Plaintiff's application to allow the parties to attempt to mediate the dispute. (Doc. No. 12 (Joint Mot. to Continue).)  On the same day, the Court granted the parties' joint motion and continued the hearing on Plaintiff's application to October 28, 2010.  (Doc. No. 13 (Order Granting Joint Mot. to Continue).)

## LEGAL STANDARD

Temporary restraining orders are governed by the same standard applicable to preliminary injunctions.  *See New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co.*, 434 U.S. 1345, 1347 n.2 (1977) (Rehnquist, J.).  "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc. (NRDC)*, — U.S. —, 129 S. Ct. 365, 374 (2008) (citing *Munaf v. Geren*, 553 U.S. 674, 128 S. Ct. 2207, 2218–19 (2008)); *see also Am. Trucking Ass'ns, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009).  This is an "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *NRDC*, 129 S.Ct. at 376. This "clear showing" requires Plaintiff to show more than a mere "possibility" of irreparable harm, but instead he must "demonstrate that irreparable injury is *likely* in the absence of an injunction." *Id.* at 375 (emphasis in original); *Am. Trucking Ass'ns*, 559 F.3d at 1052.

## DISCUSSION

Plaintiff's first amended complaint asserts eight state and federal causes of action arising from Defendants' use of the POLY-MVA marks.  (*See* Doc. No. 5.)  However, Plaintiff's application only addresses the merits of its first and third causes of action for trademark infringement and false designation of origin, respectively.  (*See* Mem. ISO Appl. 12–24.)  Accordingly, the Court addresses

the propriety of a TRO[6] only as it would pertain to those causes of action.

**I.      Plaintiff Has Not Demonstrated a Likelihood of Success on His Claim for Infringement of a Registered Mark**

Section 32 of the Lanham Act protects owners of registered trademarks against infringement. *See* 15 U.S.C. § 1114 ("Any person who shall, without the consent of the *registrant*-- (a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a *registered mark* in connection with the sale, offering for sale, distribution, or advertising of any goods or services . . . shall be liable in a civil action by the *registrant . . . .*") (emphasis added); *see also Reno Air Racing Ass'n v., Inc. v. McCord*, 452 F.3d 1126, 1129 (9th Cir. 2006) (claim for infringement of registered mark under § 1114; claim for infringement of unregistered mark under § 1125); *Toho Co. v. Sears, Roebuck & Co.*, 645 F.2d 788, 792 (9th Cir. 1981) (distinguishing between claims for infringement of registered trademarks and false designation of origin); *Coach, Inc. v. Asia Pacific Trading Co.*, 676 F. Supp. 2d 914, 924–25 (C.D. Cal. 2009) (same).  Thus, registration is a prerequisite to maintaining a trademark infringement action under section 32.

Plaintiff offers no evidence that he ever registered the POLY-MVA mark.  To the contrary, much of Plaintiff's application centers around his allegations that Defendant Albert Lee Sanchez "fraudulently submitted an application . . . for federal trademark registration [of the POLY-MVA mark]."  (Albert Sanchez, Sr. Decl. ¶ 7.)  And the evidence Plaintiff submitted in support of his application tends to indicate that, to the extent that the POLY-MVA mark is or was registered, Plaintiff is or was not the registrant.  (*See* Albert Sanchez, Sr. Decl. Ex. 4 (listing "Alo Investments" as the owner of the word mark "POLYMVA"); *id.* Ex. 5 (listing "ALO Investments" as the applicant for the word mark "POLYMVA"); *id.* Exs. 6, 7 (same).)  Accordingly, the Court finds that Plaintiff has not demonstrated a likelihood of success on his trademark infringement claim under section 32 of the Lanham Act.

---

[6]  Through his application, Plaintiff requests both a TRO and an order to show cause why a preliminary injunction should not be entered.  (*See* Appl. 1–3.)  For brevity's sake and because TROs are governed by the same standard applicable to preliminary injunctions, *see New Motor Vehicle Bd.*, 434 U.S. at 1347 n.2, this Order refers only to Plaintiff's request for a TRO.  However, its reasoning applies with equal force to Plaintiff's request for an order to show cause why a preliminary injunction should not be entered.

**II.    Plaintiff Has Not Demonstrated a Likelihood of Success on His Claim for Infringement of an Unregistered Mark**

To prevail on a claim for infringement of an unregistered mark under section 43 of the Lanham Act, 15 U.S.C. § 1125(a), a plaintiff must prove "(1) that it has a protectable ownership interest in the mark; and (2) that the defendant's use of the mark is likely to cause consumer confusion . . . ."[7] *Dep't of Parks and Recreation v. Bazaar Del Mundo, Inc.*, 448 F. 3d 1118, 1124 (9th Cir. 2006).

A.    Likelihood of Confusion

Defendants do not dispute that, if Plaintiff has a protectable ownership interest in the POLY-MVA mark, Defendants' use of the mark is likely to cause confusion. (Opp'n 8.)  Rather, Defendants contend that Plaintiff has no protectable ownership interest in the mark. (*Id.*)  Accordingly, for the purposes of this motion, the Court assumes without deciding that the likelihood of confusion requirement is satisfied, *see generally AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348–49 (listing factors courts weigh in considering the likelihood of confusion requirement), and limits its inquiry to whether Plaintiff has a protectable ownership interest in the mark.

B.    Protectable Ownership Interest

"It is axiomatic in trademark law that the standard test of ownership is priority of use.  To acquire ownership of a trademark it is not enough to have invented the mark first or even to have registered it first; the party claiming ownership must have been the first to actually use the mark in the sale of goods or services."  *Sengoku Works Ltd. v. RMC Int'l Ltd.*, 96 F.3d 1217, 1219 (9th Cir. 1996).  In addition to prior use, the party claiming ownership must show "that its use of the marks was continuous and uninterrupted."  *Dep't of Parks & Recreation*, 448 F.3d at 1126 (citing *Chance v. Pac-Tel Teletrac*, 242 F.3d 1151, 1157 (9th Cir. 2001)).

Plaintiff alleges—and Defendants do not dispute—that Plaintiff was the first to use the POLY-MVA mark in the sale of goods. (*See* Albert Sanchez, Sr. Decl. ¶¶ 4–6 (stating that Plaintiff began marketing and selling goods under the POLY-MVA mark in 1995); Albert Lee Sanchez Decl. ¶ 1

---

[7]  In their opposition to Plaintiff's application, Defendants cite the Sixth Circuit's four-factor trademark infringement inquiry. (*See* Opp'n 8 (citing *Borescopes R U.S. v. 1800Endoscope.com, LLC*, 2010 WL 2991042, at *7 (M.D. Tenn. July 26, 2010)).)  However, the Court applies the Ninth Circuit's two-factor inquiry here and reminds Defendants of the perils of relying on out-of-circuit authority.

("Plaintiff . . . began the business of distributing the nutritional supplement distributed by him as POLYMVA in 1995.").)  This finding, however, does not end the Court's inquiry.  Plaintiff alleges that Defendant Albert Lee Sanchez formed ALO Investments without Plaintiff's knowledge and "for the purpose of using the LLC as the applicant/owner for fraudulently filing a POLYMVA trademark application."  (Albert Sanchez, Sr. Decl. ¶ 20.)  However, Defendants allege that ALO Investments was formed with Plaintiff's consent, and that Plaintiff agreed that ALO Investments would hold the POLY-MVA mark.  (Albert Lee Sanchez Decl. ¶¶ 14, 23.)  Moreover, Defendants allege that Plaintiff assisted Defendant Albert Lee Sanchez in applying for and obtaining registration for the mark "POLYMVA" in ALO Investments' name (*id.* ¶ 27), and that Plaintiff provided the date of first use listed on the original application for the POLYMVA mark (*id.* ¶ 28; *see also* Albert Sanchez, Sr. Decl. Exs. 4, 6).  Thus, if the Court credits Defendants' declarations and supporting evidence, it might find that Plaintiff assigned to Defendants his right to use the POLY-MVA mark.  *See Tillamook Cnty. Creamery Ass'n v. Tillamook Cheese and Dairy Ass'n*, 345 F.2d 158, 161–62 (9th Cir. 1965) (holding that trademark assignee enjoyed the rights of its predecessor-in-interest); *see also* 7 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 18:15 (2010) ("[A]n assignment is binding so as to prevent the assignor from asserting an infringement claim against the assignee's use of the mark . . . .").

In light of the parties contradictory declarations and the evidence that accompanies them, the Court cannot resolve the issue of whether Plaintiff has a protectable ownership interest in the POLY-MVA mark without credibility determinations.  Accordingly, the Court concludes that Plaintiff has not demonstrated a likelihood of success on the merits of his claim under section 43(a) of the Lanham Act.  *See Yountville Investors, LLC v. Bank of America, NA*, 2009 WL 538667, at *2 (W.D. Wash. Mar. 4, 2009) (finding likelihood of success on the merits not established in light of witnesses' contradictory declarations).

**III.    Plaintiff Has Not Established That He Is Likely to Suffer Immediate Irreparable Harm in the Absence of Preliminary Relief**

Even assuming, *arguendo*, that Plaintiff had demonstrated a likelihood of success on the merits of his claims, the Court would find that Plaintiff's twenty-six-day delay in filing his TRO application

1   and his agreement to a continuance of the TRO hearing counsel against issuing a TRO.  (*See* Joint

2   Mot. to Continue; Order Granting Joint Mot. to Continue.)

3          A plaintiff seeking a TRO "must demonstrate *immediate* threatened injury as a prerequisite

4   to preliminary injunctive relief." *Caribbean Marine Servs. Co., Inc. v. Baldrige*, 844 F.2d 668, 674

5   (9th Cir. 1988) (emphasis added); *accord Oakland Tribune, Inc. v. Chronicle Publ'g Co.*, 762 F.2d

6   1374, 1377 (9th Cir. 1985); *cf. Miller ex rel. NLRB v. Cal. Pac. Med. Ctr.*, 991 F.2d 536, 544 (9th Cir.

7   1993) ("Plaintiff's long delay before seeking a preliminary injunction implies a lack of urgency and

8   irreparable harm." (quoting *Oakland Tribune*, 762 F.2d at 1377) (internal quotation marks omitted)).

9   Although a delay in seeking a TRO is not dispositive, it may tip the scales against the issuance of a

10  TRO.  *See Miller*, 991 F.2d at 544; *Lydo Enters. v. City of Las Vegas*, 745 F.2d 1211, 1213 (9th Cir.

11  1984) ("A delay in seeking a preliminary injunction is a factor to be considered in weighing the

12  propriety of relief."); *Dahl v. Swift Disrib., Inc.*, 2010 WL 1458957, at *4 (C.D. Cal. Apr. 1, 2010)

13  (finding that eighteen-day delay in filing TRO application "implie[d] a lack of urgency and irreparable

14  harm).

15         Two delays in this case weigh against issuing a TRO.  First, although Plaintiff filed his original

16  complaint on August 4, 2010, he waited until August 30, 2010 to file the instant application.  This

17  twenty-six-day delay, on its own, counsels against issuing a TRO.  *See Dahl*, 2010 WL 1458957, at

18  *4.  Second, after Plaintiff filed his application and the Court set a hearing on Plaintiff's application,

19  Plaintiff agreed to a thirty-day continuance of the hearing so the parties could "attempt to mediate this

20  dispute" and resolve the matters alleged in the complaint and application.  (Joint Mot. to Continue 2.)

21  Plaintiff's agreement to a continuance of the TRO hearing suggests that any harm he might suffer in

22  the absence of preliminary relief is not "immediate[ly] threatened," *Caribbean Marine*, 844 F.2d at

23  674, and seemingly contradicts his sworn statement in support of his application that his "funds will

24  be completely exhausted within two weeks without a Temporary Restraining Order."  (Albert

25  Sanchez, Sr. Decl. ¶ 45.)  Accordingly, the Court finds that Plaintiff has not demonstrated that any

26  threatened injury that is sufficiently immediate to warrant the extraordinary relief of a TRO.[8]

27  ―――――――――――

28          [8] Having found that Plaintiff has failed to demonstrate a likelihood of success on the merits of his claims or a likelihood of irreparable harm, the Court declines to address the remaining requirements for a preliminary injunction.  *See NRDC*, 129 S. Ct. at 374.

1

**CONCLUSION**

2      For the reasons stated, the Court **DENIES** Plaintiff's application for a TRO and order to show

3   cause why a preliminary injunction should not be entered.[9]

4

5   DATED:  November 17, 2010

6                                                        _Janis L. Sammartino_____
                                                         Honorable Janis L. Sammartino
7                                                        United States District Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27   _____

28      [9]  Further, the parties should bear in mind that this Court is perhaps not the proper forum for
     resolution of this familial dispute.  The Court views this dispute as ripe for settlement and suggests
     that the parties avail themselves of the services of the able Magistrate Judge Ruben Brooks.

10cv1628