1

2

3

4

5

6

7

8                                    UNITED STATES DISTRICT COURT

9                                   SOUTHERN DISTRICT OF CALIFORNIA

10

11   ALBERT SANCHEZ, SR.                    )     Case No. 3:10-cv-~~12628~~1628-GPC-MDD        (mdc)
                                            )
12                    Plaintiff,            )     **ORDER STAYING CASE**
     v.                                     )
13                                          )
     ALBERT SANCHEZ, JR. et al.,            )
14                                          )
                      Defendants.           )
15   _____       )

16

17                                          **INTRODUCTION**

18          This case arises out of a business dispute between father and son.  (SAC, ECF No. 44)  In

19   essence, plaintiff Albert Sanchez, Sr. ("Plaintiff" or "Sanchez, Sr.") alleges his son, Albert Sanchez,

20   Jr. ("Sanchez, Jr.") stole his business, which consists of the sale and distribution of a dietary

21   supplement called Poly-MVA.  (SAC ¶¶ 12-13, ECF No. 44 at 3.)

22          In this action, Sanchez, Sr. seeks recovery for Sanchez, Jr.'s allegedly wrongful sale and

23   distribution of goods marked with the alleged trademark: "POLY-MVA™".  (See SAC, ECF No. 44.)

24   In a parallel state court action, Sanchez Sr. sought recovery for Sanchez, Jr.'s allegedly wrongful sale

25   and distribution of "POLY-MVA™".[1]  (See State Ct. TAC, ECF No. 130-1.)  In both actions, Sanchez,

26   Sr. claims the allegedly wrongful conduct began in 2002 and continues through the present.  (See State

27

28          [1] Superior Court of California, County of San Diego case number 37-2010-00102792-CU-BT-
     CTL consolidated with 37-2010-00103323-CU-FR-CTL.  (See ECF No. 130-1 at 2.)

1  Ct. TAC ¶¶ 19, 89, ECF No. 130-1 at 5, 20; SAC ¶ 12, ECF No. 44 at 3.)  The difference between the

2  two actions is only the legal theory advanced: here, Sanchez, Sr. proceeds under various trademark and

3  unfair competition laws, while in the parallel action, Sanchez, Sr. proceeded under the common-law

4  theories of conversion and interference with business relations.

5      While this case was filed first in time, the parallel action proceeded first to trial.  After

6  presenting nearly three weeks of evidence, Sanchez, Sr. and his co-plaintiff concluded their case-in-

7  chief.  Sanchez, Jr. and his co-defendants moved for a nonsuit on several claims, and the state court

8  granted the motion as to, among other claims, Sanchez, Sr.'s conversion and interference claims.  The

9  state court found, in essence, that Sanchez, Sr. consented to the wrongs alleged in his conversion and

10  interference claims.  Final judgment in the parallel action has not been entered.

11      This Court, concerned about the potential res judicata effect that the parallel action might have

12  on this action, ordered the parties to file briefing on the issue of whether the state court proceedings

13  would have any preclusive effect on these proceedings.  The parties have submitted multiple briefs,

14  along with supporting documentation, on the issue. (ECF Nos. 125, 126, 130, 131, 132, 133.)  Having

15  considered the parties' submissions, and having heard oral argument on two occasions, (ECF Nos. 128,

16  135), the Court concludes that – but for there being no final judgment – the state court proceedings

17  would have a preclusive effect on the claims asserted before this Court.  Accordingly, for the reasons

18  that follow, the Court will **STAY** this action pending resolution of the parallel state-court action.

19                                    **DISCUSSION**

20  **I.    Legal Standard**

21      "[F]ederal courts must give the same full faith and credit to a state court order as state courts

22  would give the order." Southeast Res. Recovery Facility Auth. v. Montenay Int'l Corp., 973 F.2d 711,

23  713 (9th Cir. 1992).

24      Under California law,

25      the doctrine of res judicata gives certain conclusive effect to a former judgment in
        subsequent litigation involving the same controversy.  The doctrine has a double
26      aspect. In its primary aspect, commonly known as claim preclusion, it operates as a bar
        to the maintenance of a second suit between the same parties on the same cause of
27      action.  In its secondary aspect, commonly known as collateral estoppel, the prior
        judgment . . . operates in a second suit . . . based on a different cause of action . . . as
28      an estoppel or conclusive adjudication as to such issues in the second action as were
        actually litigated and determined in the first action. The prerequisite elements for

                                         2

1    applying the doctrine to either an entire cause of action or one or more issues are the
     same: (1) A claim or issue raised in the present action is identical to a claim or issue
2    [2] litigated in a prior proceeding; [3] the prior proceeding resulted in a final judgment
     on the merits; and [4] the party against whom the doctrine is being asserted was a party
3    or in privity with a party to the prior proceeding.

4    Boeken, 48 Cal. 4th at 797-98 (internal citations and quotations omitted).

5          "To determine whether two proceedings involve identical causes of action for purposes of

6    claim preclusion, California courts have consistently applied the primary rights theory." Boeken, 48

7    Cal. 4th at 797 (internal quotations omitted). "Under this theory, a cause of action arises out of an

8    antecedent primary right and corresponding duty and the delict or breach of such primary right and

9    duty by the person on whom the duty rests." Id. (internal quotations omitted). "Of these elements, the

10   primary right and duty and the delict or wrong combined constitute the cause of action in the legal

11   sense of the term." Id. at 797-98 (internal quotations omitted). As, for purposes of applying the

12   doctrine of res judicata, "the cause of action is the right to obtain redress for a harm suffered,

13   regardless of the specific remedy sought or the legal theory (common law or statutory) advanced." Id.

14   at 798. In other words, "one injury gives rise to only one claim for relief." Id. Thus, "under the

15   primary rights theory, the determinative factor is the harm suffered," and "[w]hen two actions

16   involving the same parties seek compensation for the same harm, they generally involve the same

17   primary right. Id.

18         In Boeken, the plaintiff, a smoker's widow, sued Philip Morris for loss of consortium. The

19   plaintiff voluntarily dismissed her loss of consortium claim with prejudice and then attempted to bring

20   a second lawsuit for statutory wrongful death. The California Supreme Court first found the plaintiff's

21   dismissal of her loss of consortium claim with prejudice was an adjudication on the merits. Then, in

22   concluding that the statutory wrongful death claim was res judicata, the court found the primary right

23   at issue was the right not to be wrongfully deprived of spousal companionship, and the corresponding

24   duty was the duty not to wrongfully deprive a person of spousal companionship – both together

25   constituting the cause of action. In reaching this conclusion, the court observed that "the relevant point

26   for [its] purposes [was] what plaintiff alleged [in her first complaint], because that allegation indicates

27   what primary right was adjudicated as a consequence of the dismissal with prejudice."

28         In Balasubramanian v. San Diego Community College District, the California Court of Appeal

                                          3                              3:10-cv-1628-GPC-MDD

1  addressed whether a final judgment in a federal employment discrimination suit barred a subsequent

2  state suit based on the employer's alleged failure to comply with its own procedures.  80 Cal. App. 4th

3  977, 991-92 (2000).  The court observed "[t]he determinative factor in applying the primary right

4  theory was the harm [the plaintiff] suffered," and that "[i]n both the federal and state actions, the harm

5  she alleged was having been rejected for the position of assistant professor."  That is, "both actions

6  involved the primary right to be employed by [the defendant]."  Accordingly, the court concluded the

7  prior federal judgment barred the subsequent state court action.

8  **II.      Analysis**

9          Here, the Court must decide whether the "cause of action" decided in the state-court action is

10  the same "cause of action" before this Court.  To do so, the Court must, as set forth in <u>Boeken</u>, turn

11  to Plaintiff's allegations.

12          **A.      Allegations from Parallel State-Court Action**

13          In his second cause of action for conversion, Sanchez, Sr. alleged that Sanchez, Jr. and AEI

14  wrongfully took control of Sanchez, Sr.'s interest in the cash and inventory derived from an exclusive

15  distribution agreement for Poly-MVA that Sanchez, Sr. had with Garnett McKeen Laboratory (also

16  a defendant in this case).  (State Ct. TAC ¶¶ 89-90.)  In other words, Sanchez, Sr. alleged that Sanchez,

17  Jr. converted an income stream from the sale and distribution of Poly-MVA that Sanchez, Sr. was

18  entitled to receive.  (<u>Id.</u> ¶ 90.)

19          In his twenty-fourth cause of action for interference with present business relations, Sanchez,

20  Sr. alleged that Sanchez, Jr. and AEI prevented performance of the exclusive distribution agreement

21  between Sanchez, Sr. and Garnett McKeen Laboratory "by representing himself as the sole decision

22  maker and taking distribution rights away from AMARC [i.e., Sanchez, Sr.'s company]."  (State Ct.

23  TAC ¶¶ 315-318.)

24          In their twenty-fifth cause of action for interference with present business relations, Sanchez,

25  Sr. and AMARC alleged that Sanchez, Jr. and AEI prevented the performance of a contract between

26  AMARC and its customers and distributors by "by representing to customers and distributors that

27  [Sanchez, Sr.] was not authorized to sell POLY-MVA™ and that any POLY-MVA™ order they

28  received from [Sanchez, Sr.] may be tainted product."  (State Ct. TAC ¶¶ 325-328.)

1    In its twenty-sixth cause of action for interference with prospective business relations, AMARC

2   alleged that Sanchez, Jr. and AEI disrupted the prospective business relationship between AMARC

3   and Garnett McKeen Laboratory and El-Gen, LLC (also a defendant in this case) by falsely

4   representing that he, Sanchez, Jr., was the ultimate decision maker for AMARC and by conspiring with

5   Garnett McKeen Laboratory to take away cash derived from Sanchez, Sr.'s distribution agreement with

6   Garnett McKeen Laboratory and El-Gen, LLC.  (State Ct. TAC ¶¶ 335-338.)

7    As a remedy, Sanchez, Sr. and AMARC demanded an award of damages exceeding

8   $1,000,000.

9    In sum, Sanchez, Sr. and AMARC alleged they had an exclusive right to sell and distribute

10   POLY-MVA™ pursuant to a contract with Garnett McKeen Laboratory and El-Gen, LLC.  Sanchez,

11   Sr. and AMARC alleged Sanchez, Jr. and AEI violated that right by interfering with the contract and

12   converting the income derived from that contract.  In other words, (1) the primary right at issue was

13   Sanchez, Sr. and AMARC's exclusive right to receive income from the sale and distribution of POLY-

14   MVA™, (2) the corresponding duty was the duty of anyone other than Sanchez, Sr. and AMARC to

15   refrain from selling and distributing POLY-MVA™, (3) the breach of that duty allegedly occurred

16   when Sanchez, Jr. and AEI sold and distributed POLY-MVA™, and (4) the harm Plaintiff suffered

17   was the loss of income he otherwise would have received had Sanchez, Jr. and AEI not sold and

18   distributed POLY-MVA™.

19    **B.    Instant Allegations**

20    In his first claim for federal trademark fraud, Plaintiff alleges Sanchez, Jr. and Alo Investments

21   LLC injured him when they submitted a trademark application to the USPTO that contained a false

22   and fraudulent declaration or representation.  (SAC ¶¶ 57-58.)

23    Plaintiff alleges in his second claim for federal false designation of origin, third claim for

24   federal trademark dilution, fourth claim for state trademark dilution, fifth claim for state unfair

25   competition, and sixth claim for state untrue misleading statements that Defendants undertook

26       actions and planned actions in connection with the sale, offering for sale, distribution
         or advertising of goods and/or services bearing marks containing the trademark brand
27       name POLY-MVA™ or any of its nearly identical variants, applied to dietary
         supplements and services in interstate commerce, without Plaintiff Albert Sanchez,
28       Sr.'s consent . . . .

1 (SAC ¶¶ 60, 66, 75-76, 82, 90-91.)

2       As a remedy for his claims, Plaintiff seeks a permanent injunction, restraining Defendants from

3 selling or distributing products bearing the POLY-MVA™ mark and directing the destruction of

4 Defendants' current marketing materials that contain the POLY-MVA™ mark.  Plaintiff also seeks

5 an accounting of the profits derived from Defendants' trademark fraud and infringement, along with

6 a corresponding award of damages for lost profits and loss of goodwill.

7       In sum, Plaintiff alleges he has the exclusive right to receive income from the employment of

8 the POLY-MVA™ mark in connection with the sale and distribution of products bearing that mark.

9 Plaintiff alleges Defendants violated that right when they sold and distributed products bearing the

10 POLY-MVA™ mark.  In other words, (1) the primary right at issue is Plaintiff's right to receive

11 income from the sale and distribution of products bearing the POLY-MVA™ mark, (2) the

12 corresponding duty was the duty of anyone other than Sanchez, Sr. and AMARC to refrain from the

13 sale and distribution of products bearing the POLY-MVA™ mark, (3) the breach of that duty allegedly

14 occurred when Defendants sold and distributed products bearing the POLY-MVA™ mark, and (4) the

15 harm Plaintiff suffered was the loss of income he otherwise would have received had Defendants not

16 sold and distributed products bearing the POLY-MVA™ mark.

17       Thus, it appears that in both the parallel state-court action and in this action, Plaintiff complains

18 about the harm of not receiving income from the sale and distribution of products bearing the POLY-

19 MVA™ mark.

20       This conclusion is supported by the rule that trademarks have no property value in gross.  In

21 Burgess v. Gilman, the District of Nevada recognized that "[a] trademark, unlike a patent or copyright,

22 is not 'a right in gross or at large.'"  475 F. Supp. 2d 1051, 1055 (D. Nev. 2007) (quoting United Drug

23 Co. v. Theodore Rectanus Co., 248 U.S. 90, 97 (1918)).  In other words, Plaintiff cannot argue here

24 that he is attempting to vindicate a harm done to a property interest independent from the business and

25 goodwill he would have enjoyed but for Defendants' alleged wrongdoing.  In that way, Plaintiff is –

26 in the parallel state-court action and in this action – seeking income from business (which includes the

27 trademark) that he alleges Defendants took from him.

28 / / /

1      **C.      State Court's Ruling**

2          The state court concluded, after Sanchez, Sr. and AMARC concluded their case-in-chief, that

3   Sanchez, Sr. had consented to Sanchez, Jr. and AEI selling and distributing POLY-MVA™.

4          As to the second cause of action for conversion, the state court ruled: "The request to grant a

5   nonsuit on the conversion for the stream of AMARC Enterprise's income is granted.  That's based on

6   consent and its [sic] an intangible asset . . . ."[2]

7          As to the twenty-fourth, twenty-fifth, and twenty-sixth causes of action, the state court ruled:

8   "The request for a nonsuit on the interference with contract is granted based on consent."[3]

9          Accordingly, this Court concludes that Plaintiff has presented in the parallel state-court action

10  the same "cause of action" now before this Court.

11     **D.      Actually Litigated and Same Party**

12         Here, the actually-litigated and same-party elements of the res judicata doctrine are easily met.

13  The cause of action was actually litigated in the state court action because Sanchez, Sr. and AMARC

14  presented their entire case-in-chief before the state court ruled on the motions for nonsuit.

15         The party against whom preclusion is sought, i.e. Plaintiff, was also a plaintiff in the Parallel

16  Action.  It is irrelevant that additional plaintiffs and defendants were also involved in the state court

17  proceeding.  See Vandenberg, 21 Cal. 4th 815, 828 (1999).

18         The only remaining hurdle is the requirement that the judgment from the parallel state-court

19  action be final and on the merits.

20     **E.      Final Judgment on the Merits**

21         Defendants assert all that remains for the state court judgment to be final is for the proposed

22  _____

23      [2] In Sanchez, Sr.'s second cause of action, "consent" is mentioned only in paragraph 93:
    "AMARC did not consent to Albert Jr.'s actions which deprived him [sic] of his personal property."
24  (ECF No. 130-1 at 21.)  Accordingly, this Court finds the state court's ruling on the motion for nonsuit
    "based on consent" must necessarily have been a finding that Sanchez, Sr. consented to the wrongful
25  conduct alleged in the second cause of action.  That is, the state court found that Sanchez, Sr.
    consented to Sanchez, Jr.'s "conversion of the income stream" derived from the sale of the Poly-MVA
    inventory.  (Id. at 20-21.)
26

27      [3] While "consent" is not mentioned in the twenty-fourth, twenty-fifth, and twenty-sixth causes
    of action, it can be inferred that the state court's ruling on the motion for nonsuit "based on consent"
28  was – similar to its ruling on the second cause of action – a finding that Sanchez, Sr. consented to the
    wrongful conduct alleged in those causes of action.  This inference is further supported by the rule that
    consent is a defense to intentional torts.  See Cal Civ. Code § 3515.

1  judgments to be entered and for the appeal period to pass.  Thus, because it is uncertain when the state

2  court judgment will be final, Defendants request a stay of this action pending a final state court

3  judgment.

4        Plaintiff asserts the state court order granting the motions for nonsuit is neither final nor on the

5  merits.  Plaintiff opposes Defendants' request to stay this action pending a final state court judgment.

6        **1.      Order on Motion for Nonsuit**

7        Plaintiff relies on <u>Bollinger v. National Fire Insurance Company of Hartford Connecticut</u>, 25

8  Cal. 2d 399 (1944), for the proposition that a "nonsuit does not prevent another action from being

9  brought or maintained and if pleaded in bar is not res judicata on the merits or any other issue than that

10  of the nonsuit itself."  In citing this 1944 case, however, Plaintiff fails to cite <u>American Broadcasting</u>

11  <u>Companies, Inc. v. Walter-Reade Sterling, Inc.</u>, 43 Cal. App. 3d 401, 406 (1974), which states:

12          While prior to 1961 a judgment of nonsuit was not a bar to a subsequent action on the
           same cause of action, . . . the 1961 amendment to section 581c of the Code of Civil
13          Procedure made it explicit that a judgment of nonsuit operates as an adjudication on
           the merits, unless the trial judge expressly rules otherwise.
14
   Indeed, California Code of Civil Procedure section 581c(c) states that if a motion for nonsuit "is
15  granted, unless the court in its order for judgment otherwise specifies, the judgment of nonsuit operates

16  as an adjudication upon the merits."  <u>Id.</u> § 581c(c).  Further, the California Court of Appeal has

17  observed that "[t]he minute order granting a motion for nonsuit [is] the order from which [an] appeal

18  must be taken."  <u>Costa v. Regents of Univ. of California</u>, 103 Cal. App. 2d 491, 492-93 (1951).  Of

19  course, if the motion is granted "as to some but not all of the issues presented, the court shall grant the

20  motion as to those issues and the action shall proceed as to the issues remaining[, and] no final

21  judgment shall be entered prior to the termination of the action."  <u>Id.</u> § 581c(d).

22        Thus, in the first instance, Plaintiff's argument that the state court's order on the motions for

23  nonsuit has no res judicata effect is without merit.  Because the motion for nonsuit was granted "as

24  to some but not all of the issues presented," however, no final judgment has been entered.  This Court,

25  then, must decide whether to stay the action and await final judgment in the parallel state-court action

26  or proceed to trial because not all of the res judicata elements have been satisfied.

27        **2.      Colorado River Abstention**

28        Under the <u>Colorado River</u> abstention doctrine, a federal case may be stayed pending the results

1  of a concurrent state-court action.  See Janopaul + Block Companies, LLC v. St. Paul Fire and Marine

2  Ins. Co., 830 F. Supp. 2d 976 (S.D. Cal. 2011); Sea Prestigio, LLC v. M/Y Triton, 787 F. Supp. 2d

3  1116 (S.D. Cal. 2011).  In both cases, the court analyzed whether a stay was appropriate by examining

4  the factors that the Ninth Circuit has set forth for determining whether abstention is appropriate.  That

5  list of non-exhaustive factors, includes (1) jurisdiction over property; (2) the inconvenience of the

6  federal forum; (3) avoiding piecemeal litigation; (4) the order in which the concurrent forums obtained

7  jurisdiction; (5) the source of governing law, state or federal; (6) whether the state court proceedings

8  are inadequate to protect the federal litigant's rights; and (7) the prevention of forum shopping.  See

9  Travelers Indem. Co. v. Madonna, 914 F.2d 1364, 1367–68 (9th Cir.1990); United States v. Gila

10  Valley Irr. Dist., 1992 WL 66650, at *1 (9th Cir. Apr. 3, 1992).

11       Here, this Court concludes that, based on a consideration of the above factors, staying this case

12  pending final judgment in the parallel state-court action is appropriate.  Neither this court nor the state

13  court have taken jurisdiction over any property.  Inconvenience is a neutral factor because the state-

14  court action is in the same location as this action.  This court assumed jurisdiction first, but a decision

15  on the merits was made first in the state-court action.  Both federal and state law govern Plaintiff's

16  claims in the instant action.  The state court proceedings are not necessarily inadequate given the state

17  court's concurrent jurisdiction over all claims asserted here and given the fact that Plaintiff had the

18  opportunity to assert the instant claims at the outset of the state-court action.  Forum shopping is a

19  neutral factor, as there no evidence on this issue before the Court.  Accordingly, this Court concludes

20  a stay is appropriate.  See also Leyva v. Certified Grocers of California, Ltd., 593 F.2d 857, 863 (9th

21  Cir. 1979) ("A trial court may, with propriety, find it is efficient for its own docket and the fairest

22  course for the parties to enter a stay of an action before it, pending resolution of independent

23  proceedings which bear upon the case.").

24                                              **CONCLUSION**

25       After a careful review of the parties' submissions and relevant case law, and for the foregoing

26  reasons, **IT IS HEREBY ORDERED** that:

27       1.     This case is **STAYED** pending issuance of a final judgment in the parallel state-court

28              action;

1       2.      The parties shall **NOTIFY** the Court of entry of final judgment in the parallel state-

2      court action within two weeks of such judgment being entered.

3  DATED:  December 21, 2012

4

                       HON. GONZALO P. CURIEL

5                      United States District Judge

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

3:10-cv-1628-GPC-MDD